IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |  | |
|---|---|---|---|
| **DANIEL HAILEY,** | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | NO. 1:20-CV-00039 | |
| | ) | | |
| **CHRISTOPHER SINGLETON,** *et al.,* | ) | JUDGE CAMPBELL | |
| | ) | MAGISTRATE JUDGE HOLMES | |
| Defendants. | ) | | |

## MEMORANDUM

Daniel Hailey, an inmate of the South Central Correctional Facility in Clifton, Tennessee, has filed a pro se, in forma pauperis complaint under 42 U.S.C. § 1983 against Sergeant Christopher Singleton, Chief of Unit Management Marla Ernest, and "Core Civic/South Central Correctional Facility," alleging violations of Plaintiff's civil rights. (Doc. No. 1).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id*. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id*. § 1915A(b).

1

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

A court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. ALLEGED FACTS

The complaint alleges that, while incarcerated at the South Central Correctional Facility during February 2020 to present, Sergeant Singleton and inmate f/n/u James "done wrong toward" Plaintiff. (Doc. No. 1 at 5). According to Plaintiff, on April 8, 2020, James hit Plaintiff when he declined to give James coffee. (*Id*. at 30). Afterwards, Sergeant Singleton refused to move James to a different unit, which Plaintiff believes was required by Tennessee Department of Correction (TDOC) Policy. (*Id*.) Ultimately, James was relocated, and Plaintiff does not allege any further problems with James. (*Id*. at 30-31).

The complaint further alleges that Sergeant Singleton made threats, harassed Plaintiff, retaliated against Plaintiff, unlawfully searched Plaintiff's cell, and lied about Plaintiff, "making up stories behind Plaintiff's back." (*Id*. at 5, 26, 34). Sergeant Singleton "wrote [Plaintiff] up" after he filed a Title VI grievance and threatened to send Plaintiff "to compound from Annex" if Plaintiff filed more grievances. (*Id*. at 26). Plaintiff opted not to file at least one grievance because of Sergeant Singleton's threat to "make it living hell for [him]." (*Id*. at 24). According to Plaintiff,

3

Chief Ernest "ma[de] lies as well." (*Id*. at 5). In addition, the complaint alleges that Plaintiff was not permitted to attend "his hearing" and call his witness. (*Id*. at 34).

The complaint alleges that Plaintiff has "Hep C in Stage 3 & 4 and Liver in Stage 1 & 2." (*Id*. at 13). Although Plaintiff has had an ultrasound, bloodwork, and "all the testing," he is still waiting on treatment for Hepatitis C. (*Id*.) Plaintiff has been waiting on dentures since February 2020 which he needs so he can "eat better." (*Id*.) Plaintiff also wants an eye doctor appointment. (*Id*.) According to Plaintiff, it is documented in his medical file that he has sleep apnea, and he wants a CPAP machine. (*Id*.)

## IV. ANALYSIS

The complaint names three Defendants to this action: "Core Civic/South Central Correctional Facility," Sergeant Christopher Singleton, and Chief of Unit Management Marla Ernest. Singleton and Ernest are named in their individual capacities only.

**A. Core Civic and South Central Correctional Facility**

The complaint names "Core Civic/South Central Correctional Facility" as a Defendant. However, the South Central Correctional Facility is a building and not a "person" who can be sued under 42 U.S.C. § 1983. *See Bryant v. Jackson*, No. 1:12-cv-00093, 2015 WL 344768, at *5 (M.D. Tenn. Jan. 16, 2015) (holding that, with respect to South Central Correctional Facility, "[t]he facility itself is a building, not a person amenable to suit under § 1983."). Thus, the complaint fails to state a claim upon which relief can be granted against the South Central Correctional Facility, and all claims against the facility will be dismissed.

Because it performs a traditional state function in operating a state prison, Core Civic is a "person" acting under the color of state law for purposes of Section 1983. *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir.1996). Core Civic may be liable under Section 1983 "if its official

4

policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold Core Civic liable, Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *See Street*, 102 F.3d at 818. Core Civic is only liable if its own policies were shown to be the "moving force" behind Plaintiff's injury. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Here, however, the complaint does not describe how a Core Civic policy is responsible in full or in part for any injury to Plaintiff. Therefore, for purposes of the initial screening of Plaintiff's Section 1983 claims against Core Civic required by the PLRA, the Court finds that the complaint fails to state Section 1983 claims upon which relief may be granted against Core Civic. These claims will be dismissed.

**B. Race-Based Discrimination Claims**

The complaint alleges that Sergeant Singleton is "racist against his own colors and blacks etc." (Doc. No. 1 at 4).

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 335 (6th Cir. 1990). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry*, 922 F.2d at 335. The Supreme Court has instructed that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove

5

that the defendant acted with discriminatory purposes." *Iqbal*, 556 U.S. 662, 676. Thus, "purposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of [the action's] adverse effects upon an identifiable group." *Id*. at 676–77 (internal punctuation and citations omitted).

Here, although the complaint generally alleges that Plaintiff believes Sergeant Singleton discriminated against and singled Plaintiff out because of his race, the complaint does not include any specific allegations as to what Sergeant Singleton did or did not do or what led Plaintiff to believe Singleton's actions were because of Plaintiff's race.[1] Plaintiff therefore fails to allege that "a state actor intentionally discriminated against [him] because of membership in a protected class." *Henry*, 922 F.2d at 335. Consequently, Plaintiff's equal protection claim under Section 1983 against Sergeant Singleton must be dismissed. *See Payne v. Sec'y of Treas*., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

## C. Deliberate Indifference to Medical Needs Claims

The complaint alleges that Plaintiff has not been treated for diagnosed Hepatitis C and sleep apnea. The complaint also alleges that Plaintiff needs dentures and an appointment with the eye doctor. (Doc. No. 1 at 13).

---

[1] To support his race-based allegations, Plaintiff attached a "Level II-Title VI Coordinator's Response and Reasons" memo to his complaint. (Doc. No. 1 at 20). The memo states that, "[u]pon receipt and review of the Title VI Grievance #341561, a determination was made that inmate Hailey's (#516799) contention of a Title VI violation could not be substantiated. Per the findings, inmate Hailey . . . fails to support his allegation of discriminatory treatment based on the grounds of race, color, or national origin." (*Id.*) Plaintiff's specific allegations are not included in the memo and do not inform the Court's understanding of his race-based claim.

Failure to provide medical care, including mental health care, may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*.

Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. Prison medical personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or lack thereof or by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (quoting *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available.")).

The Sixth Circuit recognizes that "[d]ental needs fall into the category 'of serious medical needs' because '[d]ental care is one of the most important needs of inmates.'" *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir.

7

2008)). With regard to dental problems, the Sixth Circuit has recognized that "'[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities.'" *McCarthy*, 313 F. App'x at 814 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)).

Here, the complaint fails to allege that Sergeant Singleton or Chief Ernest had any direct role in decisions regarding Plaintiff's medical or dental treatment. To the extent that Plaintiff seeks to impose liability on either Defendant because of his or her supervisory position, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. 662, 676. "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a Section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that either Sergeant Singleton or Chief Ernest was directly responsible for Plaintiff's alleged lack of medical or dental treatment at the South Central Correctional Facility, nor can any such allegations be liberally construed from the complaint. Neither does the complaint allege that Sergeant Singleton or Chief Ernest implicitly authorized, approved, or knowingly acquiesced in any unconstitutional conduct of another party. Because Plaintiff's allegations fail to show how either of these Defendants was personally involved in the acts about which Plaintiff complains, the Court must dismiss these Section 1983 claims against

8

Sergeant Singleton and Chief Ernest in their individual capacities for failure to state claims upon which relief can be granted. *See Johnson v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original).

The Court notes, however, that Hepatitis C constitutes a serious medical need. *See Rouster*, 749 F.3d at 446; *Vandiver v. Vasbinder*, 416 F. App'x 560, 562-63 (6th Cir. 2011) (referring to Hepatitis C as "a chronic and potentially fatal disease") (citing *Ibrahim v. District of Columbia*, 463 F.3d 3, 6-7 (D.C. Cir. 2006)). And, as noted above, under certain circumstances a dental concern may constitute a serious medical need for Section 1983 purposes. *Flanory*, 604 F.3d at 253. Taking into consideration Plaintiff's pro se status and the allegations of his complaint, the Court will permit Plaintiff to amend his complaint, if desired, to more clearly articulate his deliberate indifference to serious medical needs claim. For example, Plaintiff may be able to identify the individual(s) who denied Plaintiff treatment for his serious medical needs. For those reasons, this particular claim will be dismissed without prejudice.

**D.     Retaliation Claims**

Next, the complaint alleges the following acts by Sergeant Singleton[2] against Plaintiff in retaliation for filing grievances: threating Plaintiff, harassing Plaintiff, unlawfully searching Plaintiff's cell, writing Plaintiff up for false disciplinary infractions, and threatening to send Plaintiff "to compound from Annex" if Plaintiff filed more grievances. (Doc. No. 1 at 5, 26, 34).

---

2    There are no allegations in the complaint describing how a Core Civic policy is responsible in full or in part for the alleged harm to Plaintiff caused by retaliatory acts.

9

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *Strader v. Cumberland Cty.*, No. 2:19-cv-00045, 2020 WL 291383, at *10 (M.D. Tenn. Jan. 21, 2020). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Hill*, 630 F.3d 468, 472 (quoting *Thaddeus-X*, 175 F.3d 378, 394, 398). In *Hill*, the Sixth Circuit reversed the district court's dismissal of a First Amendment retaliation claim on initial screening, emphasizing that the essential elements of such a claim are not overly difficult to establish, "especially in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of *pro se* prison litigants." *Id*. at 471 (quoting *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009)). The *Hill* court noted that where the facts alleged in the prisoner's complaint are sufficient to support these elements, the claim should go forward even though the inmate "fails to explicitly state that he is making a First Amendment retaliation claim," and fails to "make an effective argument for that claim in his . . . complaint." *Id*.

With regard to Plaintiff's allegation that Singleton threatened to move Plaintiff to the compound/annex in retaliation for filing grievances, although the exercise of one's First Amendments rights is a protected act, the transfer of an inmate from one location within an institution to another location is not an adverse act taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct. *See Thaddeus-X*, 175 F.3d at 388. That is because inmates have no constitutional right to be confined in any particular prison, much less to a particular unit or pod within a prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt*

*v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986).

Plaintiff's other allegations of retaliation, however, are sufficient to state a nonfrivolous claim of First Amendment retaliation. First, Plaintiff's repeated complaints to prison officials and attempts to file and pursue grievances are protected speech under the First Amendment. *See Horn v. Hunt*, No. 2:15-cv-220, 2015 WL 5873290, at *5-6 (S.D. Ohio Oct. 8, 2015) ("[C]ourts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts"; "[o]nce a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the petitioner" implicates First Amendment protections) (citing cases).

Second, the adverse actions of a baseless search and seizure and false disciplinary infractions resulting in punishment would deter a person of ordinary firmness from continuing to engage in the protected conduct. Indeed, Plaintiff alleges that Sergeant Singleton's threat to "make it living hell" for Plaintiff deterred him from filing a grievance after Sergeant Singleton searched Plaintiff's cell without cause. (Doc. No. 1 at 24). *See Thaddeus-X*, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed"). Finally, Plaintiff alleges that these punitive actions were motivated by his protected conduct. *See Hill*, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action"). Consequently, the Court finds that the complaint states a colorable First Amendment retaliation claim under Section 1983 against Sergeant Singleton in his individual capacity.

**E. Harassment Claims**

Plaintiff alleges that Sergeant Singleton lied about Plaintiff, "making up stories behind Plaintiff's back." (Doc. No. 1 at 5, 26, 34). According to Plaintiff, Chief Ernest "ma[de] lies as well." (*Id.* at 5). According to Plaintiff, he notified Unit Manager Rhonda Staggs that Sergeant Singleton was bothering him, and "Staggs said she may have to talk to her boss Chief of Unit Manager Ernest about this problem." (*Id.* at 29). The complaint labels Defendants' actions as described as "harassment." (*Id.* at 4).

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Thus, Plaintiff's allegations that Defendants harassed him by making up lies about him do not rise to a deprivation of constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *Stewart v. Campbell*, No. 2:17-cv-192 , 2019 WL 123365, at *3 (E.D. Tenn. Mar. 15, 2019) (dismissing prisoner's Section 1983 claim that "Defendant harassed and humiliated him by cursing at him, by calling him disrespectful and derogatory names, and by telling him that she hoped he dies . . . because [t]hese allegations are insufficient to state a claim upon which relief may be granted under § 1983."). Accordingly, Plaintiff's allegations fail to state an Eighth Amendment claim arising from Defendants' alleged harassment, and these claims will be dismissed.

12

F.  **Criminal Charges**

The complaint also alleges that Sergeant Singleton and Chief Ernest committed acts of harassment, retaliation, and intimidation against Plaintiff in violation of Tennessee law. (Doc. No. 1 at 4). The statutes on which Plaintiff relies are found in Title 39 of the Tennessee Code, which sets forth criminal offenses in the state of Tennessee.

To the extent the complaint petitions the Court to initiate criminal prosecutions of Defendants for violations of state law (Doc. No. 1 at 3), the "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Tunne v. U.S. Postal Service*, No. 5:08CV-189-R, 2010 WL 290512, at *1 (W.D. Ky. Jan. 21, 2010) (quoting *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986)). Private citizens have "no authority to initiate a federal criminal prosecution of the defendants for their alleged unlawful acts." *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004). Thus, this Court is without jurisdiction to initiate any investigations of alleged criminal activity upon request of Plaintiff.

G.  **Due Process Claims**

The complaint alleges that Plaintiff was not permitted to attend "his hearing" and present a witness on his behalf. (Doc. No. 1 at 34). The complaint does not provide any further details regarding this allegation. Plaintiff also alleges that Sergeant Singleton did not follow TDOC policies after an inmate assaulted Plaintiff.

"[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. 539, 556 (citing *Morrissey v. Brewer*, 408 U.S. at 411, 480 (1972)). Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. *See Cleavinger v. Saxner*, 474 U.S. 193 (1985) (disciplinary board members protected by qualified immunity);

13

*Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager); *Ponte v. Real*, 471 U.S. 491, 495–99 (1985) (disciplinary board need not make contemporaneous record of reasons live witnesses for inmate not allowed); *Baxter v. Palmigiano*, 425 U.S. 308, 319–323 (1976) (disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); *Wolff*, 418 U.S. 539, 564–71 (defining scope of due process application to prison disciplinary hearings); *Wolfel v. Morris*, 972 F.2d 712 (6th Cir.1992).

In *Wolff v. McDonnell*, the Supreme Court held that, when a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (i) written notice of the charges at least twenty-four hours prior to the hearing; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[;]" and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. 418 U.S. 539, 563–64, 566. These protections are required only when a liberty interest is at stake. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (quoting *Sandin*, 515 U.S. at 484); *see Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (finding no violation of inmate's due process rights when corrections officer assigned inmate to segregation as punishment prior to inmate's disciplinary hearing).

Assuming that Plaintiff's hearing-based claim concerns a disciplinary hearing, the complaint does not identify what punishment Plaintiff received, or what consequences ensued, as

14

a result of the disciplinary hearing. The complaint sets forth no facts demonstrating that Plaintiff had a liberty interest in the outcome of his disciplinary hearing, such as a loss of sentence credit. The complaint provides no information whatsoever about the hearing Plaintiff received.

To the extent Plaintiff argues that he has the right to prove his innocence at a hearing, a prison disciplinary infraction is not the equivalent of a state or federal criminal charge against Plaintiff. "The constitutional adequacy of these [prison disciplinary] proceedings is not to be measured by the requirements of a criminal prosecution, for the full panoply of procedural due process rights do not apply to the administration of prison discipline." *Brooks v. Westbrooks,* No. 3:17-cv-00686, 2017 WL 3868275, at *3 (M.D. Tenn. Sept. 5, 2017) (quoting *Crafton v. Luttrell*, 378 F. Supp. 521, 526 (M.D. Tenn. 1973) (citations omitted)).

To the extent that Plaintiff brings due process claims based on the failure of certain Defendants to respond to Plaintiff's grievances, a plaintiff cannot premise a Section 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled in part on other grounds by Sandin*, 515 U.S. 472.

Furthermore, alleged violations of TDOC policies are not actionable under Section 1983. *See Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995) (stating that, after *Sandin*, it became clear that mandatory language in prison regulations does not create a liberty interest protected by the due process clause); *Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015); *Levine v. Torvik*, 986 F.2d 1505, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). Consequently, the Court finds

that the complaint fails to state Section 1983 due process claims arising from Plaintiff's disciplinary hearing or any Defendants' failure to follow TDOC or facility policies.

## V. CONCLUSION

Having conducted the review required by the PLRA, the Court determines that the complaint states a colorable First Amendment retaliation claim under Section 1983 against Sergeant Singleton in his individual capacity. This claim may proceed for further development of the record.

With respect to all other claims and Defendants, the complaint fails to state claims upon which relief can be granted under Section 1983. Those claims and Defendants will be dismissed. Provided however, the Court will permit Plaintiff to amend his complaint, if desired, to more clearly articulate his deliberate indifference to serious medical needs claims; for example, Plaintiff may be able to identify the individual(s) who denied Plaintiff treatment for his serious medical needs.

An appropriate Order will be entered.

                                                                                           _____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE